*1997-NMSC-034*

945 P.2d 66

**STATE of New Mexico, Plaintiff–
Petitioner,**

v.

**Louis ROSAIRE, Defendant–Respondent.**

No. 23993.

Supreme Court of New Mexico.

July 28, 1997.

Tom Udall, Attorney General, Patricia
Gandert, Assistant Attorney General, Santa
Fe, for Plaintiff–Petitioner.

Rita LaLumia, Santa Fe, for Defendant–
Respondent.

## OPINION

MINZNER, Justice.

1. The State of New Mexico appeals from a decision by the Court of Appeals reversing a conviction following a jury trial on the basis of an error in a uniform jury instruction. *See State v. Rosaire*, 1996 NMCA 115, ¶ 1, 123 N.M. 250, 939 P.2d 597. Rosaire had been convicted of escape from an inmate-release program, contrary to NMSA 1978, Section 33–2–46 (1980). On appeal to the Court of Appeals, Rosaire argued that the trial court failed to instruct the jury on an essential element of the crime. The Court of Appeals agreed and granted Rosaire a new trial. On appeal to this Court, the State argues that the trial court correctly instructed the jury and that the Court of Appeals' opinion misconstrued Section 33–2–46. We agree with the Court of Appeals' conclusion, although we modify its interpretation of a portion of the statute, and we affirm the Court of Appeals' order remanding this cause for a new trial.

### I.

2. Rosaire had been incarcerated in an inmate-release program at Camp Sierra Blanca in Ft. Stanton, New Mexico, on a conviction unrelated to this case. In anticipation of his upcoming parole, he was granted a forty-eight-hour furlough so that he could find housing in Albuquerque. During his trip, the car he had borrowed broke down twice. He called the camp staff to inform them of the problem and his attempt to resolve it, and each time he was told to return as soon as possible. Rosaire finally made it back to the camp twenty-two hours late. Rosaire's failure to return to the camp at the designated time resulted in his conviction for escape from an inmate-release program, a third degree felony. *See* § 33–2–46. Rosaire was sentenced to a three-year term of imprisonment, which was suspended, and his sentence was enhanced by four years pursuant to the Habitual Offender Act. NMSA 1978, § 31–18–17 (1993). The four-year enhancement may not be suspended or deferred. Section 31–18–17(C).

3. The Court of Appeals reversed Rosaire's conviction, holding that the jury instructions failed to include an essential element of the crime. *Rosaire*, 1996 NMCA 115, ¶ 1, 123 N.M. 250, 939 P.2d 597. We agree with the Court of Appeals that the jury instructions do not contain an essential element of the crime of escape from an inmate-release program. The Court of Appeals also construed Section 33–2–46. The Court construed the phrase, "with the intent not to return," as used in Section 33–2–46, as requiring the State to prove that a prisoner charged with escape from an inmate-release program never intended to return in order to prove that prisoner guilty of escape under Section 33–2–46. *See Rosaire*, 1996 NMCA 115, ¶ 18, 123 N.M. 250, 939 P.2d 597. We disagree with this portion of the Court's analysis and holding.

### II.

4. Section 33–2–46 reads as follows:

Any prisoner whose limits of confinement have been extended, or who has been granted a visitation privilege under the inmate-release program, who willfully fails to return to the designated place of confinement within the time prescribed, with the intent not to return, is guilty of an escape.

Whoever is convicted of an escape under the provisions of this section is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31–18–15 NMSA 1978.

5. The uniform jury instruction, which the jury received in this case, required the jury to find that Defendant was committed to the state penitentiary, was released to visit Albuquerque, and intentionally failed to return within the time fixed. *See* UJI 14–2228 NMRA 1997. The statute, however, requires a finding that Rosaire "willfully" failed to return. *See* § 33–2–46. The uniform jury instruction does not contain any requirement that the jury find the failure to return was "willful." *See* UJI 14–2228 NMRA 1997.

6. Rosaire objected to the uniform jury instruction on the ground it lacked an essential element. He requested an alternate in-

struction that included both the element that he willfully failed to return to confinement within the time fixed for his return and that he did not intend to return. The trial court instructed the jury in accordance with the uniform jury instruction, which included as elements the fact that "Defendant failed to return to confinement within the time for his return" and that he "did not intend to return within the time fixed." The trial court also instructed the jury on general intent. The jury was instructed to find Rosaire guilty only if the State proved he acted intentionally, and the jury also was instructed that a person acts intentionally when he purposely does an act which the law declares to be a crime. *See* UJI 14–141 NMRA 1997.

■■■ 7. The Court of Appeals determined that the uniform jury instruction was defective because it did not contain the element of "willfulness," required by the statute. We agree. A "willful" failure to return constitutes a failure to return that is without justification or excuse. This is not, as it seems the State would have us hold, a strict liability statute. The Court of Appeals has previously defined "willful" in an analogous statute in *State v. Masters*, 99 N.M. 58, 653 P.2d 889 (Ct.App.1982). *Masters* explained that NMSA 1978, Section 31–3–9 (1973), which addresses a defendant's willful failure to appear before a court after being released pending trial or appeal, only imposes liability when the failure to appear is without justification or excuse. *Masters*, 99 N.M. at 60, 653 P.2d at 891. "'Willfully' denotes the doing of an act without just cause or lawful excuse." *Id.* (citing *Potomac Ins. Co. v. Torres*, 75 N.M. 129, 131–32, 401 P.2d 308, 309 (1965)). For the purposes of understanding the use of "willfully" in Section 33–2–46, we

adopt the definition of "willfully" used in *Masters*.

■■■ 8. We conclude the Court of Appeals correctly held the present uniform jury instruction lacks an essential element. *See generally State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (authorizing the Court of Appeals to question a uniform jury instruction not previously addressed by Supreme Court case precedent). The jury was instructed in this case, in effect, to find Rosaire guilty if he purposely failed to return. That is not a sufficient expression of the mens rea required by the legislature in Section 33–2–46. Therefore, the trial court erred in instructing the jury pursuant to the uniform jury instruction. The trial court should have instructed the jury that Defendant could only be found guilty of escaping from an inmate release program if his failure to return was willful.[1]

## III.

9. The Court of Appeals construed the phrase "with the intent not to return," as used in Section 33–2–46, as meaning "with the intent *never* to return." *Rosaire*, 1996 NMCA 115, ¶ 18, 123 N.M. 250, 939 P.2d 597. The Court did so in order to "give effect to every part of [the] statute, reconciling different provisions so as to make them harmonious." *Id.* (citing *Varoz v. New Mexico Bd. of Podiatry*, 104 N.M. 454, 456, 722 P.2d 1176, 1178 (1986)). On appeal to this Court, the State argues the Court of Appeals erred in this construction. The State reasons that under this construction, a prisoner who escaped from an inmate-release program with the intent never to return should be charged with escape from the penitentiary, contrary

---

1. The current UJI does not contain the essential element of "willfulness." *See* UJI 14–2228 NMRA 1997. It should be added. The uniform instruction should read, in general, as follows: For you to find the defendant guilty of escape from the state penitentiary inmate-release program, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

    1. The defendant was committed to the state penitentiary;

    2. The defendant was released from the penitentiary to [ ];

    3. The defendant failed to return to confinement within the time fixed for his return and the failure was willful;

    4. The defendant did not intend to return within the time fixed;

    5. This happened in New Mexico on or about the ___ day of ___, 19__.

If requested, the court should provide a definition of "willful," consistent with this opinion. For example, the court may, if requested, instruct the jury that "willful," in this context, means without sufficient justification or excuse.

to NMSA 1978, Section 30–22–9 (1963), which is a second degree felony.

10. We agree that the Court of Appeals misconstrued this phrase; however, we are not persuaded that the question of whether Section 30–22–9 might apply to a prisoner who takes advantage of an inmate-release program to escape from the penitentiary helps us resolve the question in this case. The legislature has enacted a specific statute that applies to these facts. That statute is Section 33–2–46, and the question before us is what the legislature intended to punish in proscribing escape from an inmate-release program. We are not persuaded that addressing the question of what is punishable under Section 30–22–9 will help us determine the specific issue raised in this case under Section 33–2–46. Section 30–22–9 contains no reference to "intent" or to "willful" conduct. Once we determine what the legislature intended in Section 33–2–46, we may be in a better position to determine whether there is overlap between Section 33–2–46 and Section 30–22–9.

11. In *State v. Tarango*, 105 N.M. 592, 599, 734 P.2d 1275, 1282 (Ct.App.1987), *overruled on other grounds by Zurla v. State*, 109 N.M. 640, 645, 789 P.2d 588, 593 (1990), the Court of Appeals held that Section 33–2–46 creates a specific intent crime. We adopt that holding. Under that holding, the instruction on general intent is neither necessary nor sufficient. In *Tarango*, the Court of Appeals also held that the statute requires both a willful failure to return and an intent not to return. *Id.* We also adopt this holding. Under that holding, an intent not to return is necessary but not sufficient to convict.

12. We construe the phrase, "intent not to return," consistently with *Tarango*. Further, we construe the phrase, "intent not to return," to mean that a defendant will be liable under the statute if he or she does not intend to return at the time set by the penitentiary staff. We read the phrase in connection with the material that precedes it, proscribing a failure to return within the time prescribed. Therefore, a defendant who chooses to take an extra day of furlough without permission may be liable under the inmate-release escape statute.

**IV.**

13. On some facts, there may be little difference between an intentional act and a willful act. That is, if a defendant chooses to take an extra day of furlough without permission, he or she has acted intentionally and, if the act was without justification or excuse, he or she also will have acted willfully. However, we can imagine facts in which a defendant will have acted purposely but with an excuse or justification that a jury could find precluded a finding of willfulness. In such a case, and we hold this is one, the jury may not distinguish a purposeful act from a willful one without an instruction on the elements of both intent and lack of justification or excuse. In such cases, the failure to instruct on "willfulness" is a failure to instruct on an essential element, which is reversible error. We therefore affirm the Court of Appeals' holding that the jury was not instructed on the essential element of willfulness and remand the cause for a new trial.

14. We disagree with the Court of Appeals' holding that to convict under Section 33–2–46, the State must prove a defendant had the intention never to return to the inmate-release program. Rather, we hold that a defendant may be guilty of this crime if he or she intends not to return at the time fixed, but the State must prove beyond a reasonable doubt that the failure to return at the time fixed is not only purposeful but also without justification or excuse.

15. We affirm the Court of Appeals' order. We therefore reverse Rosaire's conviction and remand this case for a new trial.

16. **IT IS SO ORDERED.**

FRANCHINI, C.J., and SERNA and McKINNON, JJ., concur.