IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 28, 2017

**NO. 34,812**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**CODY PLATERO,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

{1} This case presents the question of whether, as a preliminary matter, the State should be prohibited from presenting its evidence to establish the *corpus delicti* of vehicular homicide where the cause of an accident and the cause of death are to be drawn purely from circumstantial evidence and without any expert testimony. The State appeals the district court's order dismissing the charges against Defendant Cody Platero for two counts of vehicular homicide and possession of a controlled substance. The district court dismissed the charges, pursuant to Rule 5-601(B) NMRA and *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329. The district court found that "the State [could not] meet its burden of proving cause of death or presenting evidence of [the] cause of death" without expert testimony, which the State did not schedule to call for trial. We conclude that circumstantial evidence may be used to establish the elements of vehicular homicide and that an expert's testimony is not required as a matter of law before the State may proceed with its case in chief. The State presented sufficient facts in the indictment and at the pretrial hearings to circumstantially establish the *corpus delicti* of vehicular homicide. Therefore, the district court erred in finding that an expert was required as a matter

of law in this case. We reverse and remand to the district court for further proceedings.

**BACKGROUND**

{2}    On December 14, 2010, the Valencia County Sheriff's Department responded to reports of a wrecked car on New Mexico Highway 47. There were no eyewitnesses to the crash. Officers on the scene observed what they believed to be "a rollover accident that resulted in the death of a female subject, who had been apparently ejected from the motor vehicle." Officers followed a pair of footprints and located Defendant, who smelled "strongly of an alcoholic beverage, had slurred speech and bloodshot watery eyes." He sustained numerous injuries, which the officers concluded were the result of being ejected from the vehicle. When interviewed by police at the hospital, Defendant initially denied knowledge of the wreck and then told officers that he and the deceased, Amber Smith, were going to the desert to have sex and that she was driving.

{3}    On January 26, 2012, a grand jury indicted Defendant on two counts of homicide by vehicle, by driving while under the influence of intoxicating liquor or drugs and by reckless driving, in violation of NMSA 1978, Section 66-8-101(C) (2004, amended 2016). Defendant was also charged with possession of a controlled substance, in violation of NMSA 1978, Section 30-31-23 (2005, amended 2011), and leaving the scene of the accident, in violation of NMSA 1978, Section 66-7-201(C)

(1989). The indictment, in pertinent part, charged Defendant "did cause the death of [decedent] in the unlawful operation of a motor vehicle while under the influence of intoxicating liquor or any drug . . . [or] in a reckless manner[.]"

{4} Defendant was arraigned on March 13, 2012. The case was set for trial in March 2015. On February 18, 2015, Defendant moved to exclude or limit the testimony of State witnesses, including lab technicians and police officers, regarding the cause of the accident and the cause of death of the decedent. Defendant argued that because the State's witness list included no experts on these issues, testimony about the cause of the accident or cause of the death of the decedent would be speculation and prejudicial to Defendant. The State agreed that it would not call an expert witness to testify as to the cause of the accident and that there were no witnesses who observed the cause of the crash. Furthermore, the State did not have an autopsy report for the decedent, and no one from the Office of the Medical Investigator (OMI) was on the State's witness list.

{5} The district court held a hearing on Defendant's motion on February 25, 2015, and trial was scheduled to begin the following week, March 2, 2015. The district court asked the State how it would prove that the accident was the decedent's cause of death. The State argued that circumstantial evidence was sufficient. Defendant responded that the State could not show who was driving or what happened to cause

3

the accident stating, "This case is all about speculation. . . . We have a problem with the sufficiency of the evidence." Defendant agreed with the district court's characterization of the motion as a "direct[ed] verdict [motion]." The district court asked the parties to provide relevant case law as to whether trial could move forward on the facts presented, otherwise the court would rule that "as a matter of law, the State does not have a critical piece of the puzzle to go forward with the case" and would dismiss pursuant to *Foulenfont*, 1995-NMCA-028. After a subsequent hearing on February 27, 2015, the district court dismissed counts one, two and three, related to vehicular homicide and the possession of a controlled substance, and stayed the proceedings with regard to count four, leaving the scene of an accident. The district court explained its belief that dismissal was proper because "the State cannot meet its burden of proving cause of death or presenting evidence of [the] cause of death, . . . they can't do it circumstantially on this case with lay witnesses." The district court dismissed the charges "for failure of the State to have a critical witness ready to testify [for trial]." The State timely appealed.

**DISCUSSION**

{6}     "Judicial authority to rule on pretrial motions in criminal matters is outlined in Rule 5-601." *State v. LaPietra*, 2010-NMCA-009, ¶ 7, 147 N.M. 569, 226 P.3d 668. Rule 5-601(B) provides that "[a]ny defense, objection or request which is capable of

4

determination without a trial on the merits may be raised before trial by motion." *Id.*; *see State v. Gomez*, 2003-NMSC-012, ¶ 8, 133 N.M. 763, 70 P.3d 753 (stating that where a motion involves factual matters that are not capable of resolution without a trial on the merits, Rule 5-601(B) requires the question to be submitted to the fact-finder). We review whether the district court was within its authority under Rule 5-601 in dismissing charges against Defendant under a de novo standard of review. *See LaPietra*, 2010-NMCA-009, ¶ 5 ("The contours of the district court's power to conduct a pretrial hearing on a motion to dismiss charges brought under Rule 5-601 is a legal question reviewed under a de novo standard.").

{7}    "In *Foulenfont*, we stated that it was proper for a district court to decide purely legal matters and dismiss a case when appropriate before trial." *LaPietra*, 2010-NMCA-009, ¶ 7. "Questions of fact, however, are the unique purview of the jury and, as such, should be decided by the jury alone." *Id.*; *see Foulenfont*, 1995-NMCA-028, ¶ 3 (stating that "it was improper to dismiss a failure to appear charge on the basis of a factual determination made at the preliminary hearing stage"). In *Foulenfont*, the purely legal issue addressed by this Court was whether a fence is a "structure" under the burglary statute; the district court had ruled it was not. 1995-NMCA-028, ¶¶ 2, 7. The state conceded that the facts of the case were not in dispute and that finding the defendant guilty turned only on the resolution of the legal question regarding the

fence. *Id.* ¶ 6. Accordingly, we held that the district court properly resolved the legal question prior to trial and upheld the dismissal. *Id.* ¶¶ 10, 13. However, in such cases where the factual matters are in dispute and not capable of resolution without a trial on the merits, our Supreme Court held that the district court "lacks the authority to grant the motion prior to trial." *State v. Hughey*, 2007-NMSC-036, ¶ 11, 142 N.M. 83, 163 P.3d 470.

{8}     Generally, a Rule 5-601(B) motion may not be used to test the sufficiency of the State's evidence to establish the elements of the charged crime. In *LaPietra*, the defendants, charged with intentional or neglectful child abuse resulting in great bodily harm, brought a *Foulenfont* motion arguing that the state lacked evidence to prove that the defendants caused their children to be placed in a situation that endangered their life or health. *LaPietra*, 2010-NMCA-009, ¶¶ 1, 8. On appeal, the defendants framed the issue as a legal question that asked whether the state had any evidence that would justify a jury trial. *Id.* ¶ 8. In reversing, this Court explained that "[w]hen an issue involves a specific determination or finding, especially when it is an element of the offense, it is a question that is within the unique purview of the jury" and rejected what the state characterized as "a pretrial attack on the sufficiency of [the] evidence under the guise of a *Foulenfont* motion[.]" *LaPietra*, 2010-NMCA-009, ¶¶ 6, 10.

{9} Recently in *State v. Pacheco*, this Court recognized that the question of "the district court's 'authority' to decide a motion or whether the motion involves a question of fact or a pure question of law" may be confusing and therefore sought to reframe the analysis. 2017-NMCA-014, ¶ 10, 388 P.3d.307. In *Pacheco*, the state appealed the district court's dismissal of charges against the defendant for fraud. 2017-NMCA-014, ¶¶ 1-2. The state argued that the district court improperly resolved a question of fact as to the meaning of a release agreement between the defendant and the other party to the contract. *Id.* ¶ 9. Based upon Rule 5-601 and *Foulenfont*, this Court reframed the issue before it, stating, "the underlying question [is] whether the undisputed facts—whether stipulated to by the [s]tate or alleged in the indictment or information—show that the [s]tate cannot prove the elements of the charged offense at trial, thereby making a trial on the merits unnecessary." *Id.* ¶ 10. More succinctly, "whether the state could reasonably assert the availability of additional evidence." *Id.* (alteration, internal quotation marks, and citation omitted). This Court held that the defendant's motion to dismiss could not be decided without a trial because an element of the charge of fraud was in dispute and the state planned to present such evidence at trial. *Id.* ¶¶ 11-12.

{10} Here, the State argues that the district court erred by dismissing the charges against Defendant in reliance on *Foulenfont*. The State frames the question on appeal

as a purely legal issue: whether expert testimony was required, as a matter of law, to prove the cause of death of the decedent. The State argues that there is no such requirement, and in this case, no need that expert testimony be offered to prove cause of death as a matter of law. The State further argues that the district court was in no position to require such testimony in this case because: (1) the district court could not make a determination without hearing testimony and considering photographs and other evidence of the accident scene and the decedent's injuries, and (2) the district court did not have the authority, pretrial, to make such a factual determination. We agree, and Defendant concedes that cause of death may be proved by circumstantial evidence and an expert is not required in every instance. *See State v. Brown*, 1984-NMSC-014, ¶ 8, 100 N.M. 726, 676 P.2d 253 (holding the eyewitness accounts that the defendant struck the victim in the head and dragged her body away was sufficient to prove that she died as a result of her injuries); *State v. Bell*, 1977-NMSC-013, ¶¶ 11-15, 90 N.M. 134, 560 P.2d 925 (rejecting the defendant's argument that "great bodily harm" be proved by medical testimony); *see also State v. Jacobs*, 1978-NMCA-013, ¶ 12, 91 N.M. 445, 575 P.2d 954 ("Even if the evidence is circumstantial, if the circumstantial evidence substantially supports the verdict, the verdict will not be set aside."), *overruled on other grounds by State v. Moore*, 1989-NMCA-073, 109 N.M. 119, 782 P.2d 91. However, Defendant argues that the

8

State could not prove the *corpus delicti* of vehicular homicide because it had "no evidence, direct or circumstantial," of the two elements of the crime: (1) "that [Defendant] was in the unlawful operation of a motor vehicle[,]" and (2) "that the death was caused by the unlawful operation of a motor vehicle."

{11} In reliance on the framework set forth in *Pacheco,* we must determine whether the facts—as alleged in the indictment and presented at the pretrial hearing—show that the State could not prove the elements of vehicular homicide at trial, thereby making trial unnecessary. *See* 2017-NMCA-014, ¶ 10.

{12} Defendant was charged with two counts of vehicular homicide, pursuant to Section 66-8-101(C) which states, "A person who commits homicide by vehicle or great bodily harm by vehicle while under the influence of intoxicating liquor or while under the influence of any drug or while [driving recklessly] is guilty of a third degree felony[.]" The corresponding Uniform Jury Instruction states that the elements of vehicular homicide are: (1) "[t]he defendant operated a motor vehicle . . . while under the influence of intoxicating liquor [or] while under the influence of . . . a drug [or] in a reckless manner"; (2) "[t]he defendant thereby caused the death of or great bodily injury to [the victim]"; and (3) "[t]his happened in New Mexico[.]" UJI 14-240 NMRA (alternations omitted).

9

{13} First, the State presented circumstantial evidence that Defendant was not in the lawful operation of the vehicle. Defendant admitted to officers that he was in the vehicle. The investigation concluded that blood found on the driver's side matched Defendant's DNA. Defendant had a blood alcohol content of 0.06 and had methamphetamine in his system. Although the State admits that the prosecutor had no intention of calling an expert reconstructionist or an eyewitness to testify to the cause of the accident, *corpus delicti* may be proved by direct or circumstantial evidence. *See State v. Maestas*, 1978-NMCA-084, ¶ 60, 92 N.M. 135, 584 P.2d 182. The State therefore presented acceptable facts as to the first element of the charge of vehicular homicide.

{14} Defendant argues that the State should be required to provide additional evidence as to the cause of the accident. Defendant cites several prior cases where this Court determined there was sufficient evidence to prove vehicular homicide based on facts presented by eyewitness testimony or an expert to reconstruct the accident. *See State v. Munoz*, 2014-NMCA-101, ¶ 11, 336 P.3d 424 (compiling cases of vehicular homicide by reckless driving in which all had eyewitnesses of the defendant's driving at high speeds or an accident reconstructionist to establish recklessness). However, we do not view these authorities as "requiring" such proof as a preliminary matter. Instead, we see Defendant's argument to be an attempt to

have us weigh the sufficiency of the circumstantial evidence presented—a factual determination that would be inappropriate at this juncture in the case. *See State v. Bregar*, 2017-NMCA-028, ¶ 49, 390 P.3d 212 (stating that the state proved the *corpus delicti* of vehicular homicide where the inference could be drawn from the position of the driver's seat that the defendant was the driver of the vehicle).

{15} The second element of the crime may also be proved through circumstantial evidence. Our appellate courts, in evaluating the sufficiency of the evidence, have stated that circumstantial evidence and lay witness testimony is sufficient to establish the cause of death, as well as to establish great bodily harm. *See, e.g.*, *State v. Coyle*, 1935-NMSC-020, ¶ 16, 39 N.M. 151, 42 P.2d 770 (rejecting the argument that the evidence was insufficient to prove murder where the state failed to obtain an autopsy report on the cause of death). In *Brown*, the defendant, convicted of first degree murder and criminal sexual penetration, argued on appeal that there was insufficient evidence to support his conviction because the jury relied on circumstantial evidence. 1984-NMSC-014, ¶¶ 1, 5. Our Supreme Court recognized that the evidence—the defendant struck victim in the head and helped drag her body away—was sufficient to prove she died as a result of the injuries inflicted by the defendant. *Id.* ¶ 8. In *Bell*, our Supreme Court rejected the defendant's argument that there was no medical testimony establishing great bodily harm to support a first degree kidnaping

11

conviction, stating "the law does not require that great bodily harm be proved exclusively by medical testimony." 1977-NMSC-013, ¶¶ 11-15 (internal quotation marks and citation omitted). Many other jurisdictions have similarly concluded that cause of death in homicide cases may be "established not only by a physician or pathologist, but by lay and circumstantial evidence." *Wiley v. State*, 449 So. 2d 756, 760 (Miss. 1984); *see Higgs v. State*, 222 P.3d 648, 654 (Nev. 2010); *Fountain v. State*, 401 S.W.3d 344, 356 (Tex. Crim. Ct. App. 2013); *see also Shields v. State*, 677 S.E.2d 100, 103 (Ga. 2009); *State v. Casper*, 219 N.W.2d 226, 227 (Neb. 1974). Resultantly, some courts have also concluded that the type of circumstantial evidence generally presented in vehicular homicide cases makes expert testimony unnecessary on the issue of the cause of death. *See People v. Tostado*, 416 N.E.2d 353, 357 (Ill. App. Ct. 1981) (stating that "[p]roof of death . . . may be established by circumstantial evidence" in a case in which an eyewitness observed the accident, the victim was ejected from the vehicle, and the paramedics found no pulse); *State v. Price*, 406 A.2d 883, 885 (Me. 1979) (stating that the "[s]tate's failure to call a medical expert does not render the evidence insufficient for a jury determination on the cause of death" in which the victim's airway filled with blood after the crash); *State v. Golstone*, 175 N.W. 892, 893 (Minn. 1920) (holding that "the jury might infer that the contact with

the car caused his death" from the fact that the victim was knocked down and dragged under the vehicle).

{16}     In this case, although the facts are attenuated and would require the jury to make several inferences, there is circumstantial evidence to support the second element of vehicular homicide—the crash caused the death of the decedent. Defendant told officers that the decedent was alive in the vehicle and that she was driving prior to the accident. The decedent was found by officers with "visible signs of trauma" and appeared to have been ejected from the vehicle in the roadway. Although the State readily conceded that it would not call an expert to testify as to the cause of death and that its officers would only be able to testify as to their personal observations on the scene, the circumstantial evidence to be presented by the State is sufficient to establish the *corpus delicti* of the crime and to overcome a motion pursuant to *Foulenfont*.

{17}     Defendant continues to argue as to the cause of death that there is no evidence that the decedent died as a result of the accident. Again, Defendant distinguishes the case law cited above as having an eyewitness to the crash to establish that the decedent was alive immediately before and dead after the crash. The fact-finder may be troubled by the State's failure to secure any expert from OMI or an autopsy to opine on the cause of death but that does not allow the district court to ignore the

13

circumstantial evidence and our legal precedent on the issue. This appeal does not present us with the question of whether the facts as alleged are sufficient to overcome a directed verdict motion or to support a finding by the jury of guilt beyond a reasonable doubt. Whether the evidence presented at trial would meet these standards is not before us. Neither is the question of the admissibility of the State's evidence. We only conclude that the circumstantial facts presented by the State are sufficient for the State to proceed to trial in its attempt to prove the elements of vehicular homicide. *See Pacheco*, 2017-NMCA-014, ¶ 10.

**{18}** We, therefore, hold that the district court erred in finding that an expert was required to prove cause of death in this case and, inconsistent with established precedent, the district court improperly weighed and measured the sufficiency of the evidence. *See LaPietra*, 2010-NMCA-009, ¶ 13 (stating that "[d]istrict courts are simply not permitted to re-evaluate the sufficiency of the evidence behind an indictment prior to trial").

**CONCLUSION**

**{19}** For the foregoing reasons, we reverse the district court's order and remand for further proceedings.

{20}     **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL E. VIGIL, Judge**

15